UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **BENJAMIN CLARK, No. 110731** | **CIVIL ACTION NO. 3:11-cv-0139** |
| **CHARLES TAYLOR, No. 229964** | **CIVIL ACTION NO. 3:11-cv-0140** |
| **JOE BELL, No. 526341** | **CIVIL ACTION NO. 3:11-cv-0142** |
| **ALEXIS SHELBY, No. 426167** | **CIVIL ACTION NO. 3:11-cv-0143** |
| **DWAYNE FONTENOT, No. 439863** | **CIVIL ACTION NO. 3:11-cv-0145** |
| **LUIS CORZO, No. 439278** | **CIVIL ACTION NO. 3:11-cv-0148** |
| **SONNY CAREY, No. 527440** | **CIVIL ACTION NO. 3:11-cv-0153** |
| **LEMONTE DELMORE, No. 377208** | **CIVIL ACTION NO. 3:11-cv-0154** |
| **TRAVIS STEPHENS, No. 446124** | **CIVIL ACTION NO. 3:11-cv-0155** |
| **DAVID HICKS, No. 122979** | **CIVIL ACTION NO. 3:11-cv-0157** |
| **KEN DALE BUCKLES, No. 480945** | **CIVIL ACTION NO. 3:11-cv-0162** |
| **KEVIN SENEGAL, No. 374784** | **CIVIL ACTION NO. 3:11-cv-0164** |
| **TODD PHILLIPS, No. 289030** | **CIVIL ACTION NO. 3:11-cv-0167** |
| **WENDELL SMITH, No. 428388** | **CIVIL ACTION NO. 3:11-cv-0168** |
| **TAQUIN TYLER, No. 378922** | **CIVIL ACTION NO. 3:11-cv-0171** |
| **TERRENCE POLK, No. 368239** | **CIVIL ACTION NO. 3:11-cv-0177** |
| **RICHARD RATLIFF, No. 532166** | **CIVIL ACTION NO. 3:11-cv-0178** |
| **CLEVELAND YOUNG, No. 308019** | **CIVIL ACTION NO. 3:11-cv-0180** |
| **CHARLES TAYLOR, No. 229964** | **CIVIL ACTION NO. 3:11-cv-0323** |
| | |
| **VS.** | **SECTION P** |
| | |
| **OWNER, LOUISIANA CORRECTIONAL SERVICE, INC., ET AL.** | **JUDGE ROBERT G. JAMES** <br> **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

On January 24, 2011, the above named *pro se* plaintiffs and others – all prisoners in the custody of Louisiana's Department of Public Safety and Corrections, who were at the time of filing incarcerated at the Caldwell Detention Center (CDC), Greyson, Louisiana – filed a single civil rights complaint complaining about conditions of confinement and requesting class action certification. Each of the plaintiffs who signed the original complaint (which was assigned Civil Action No. 3:11-cv-0139) were assigned separate Civil Action Docket Numbers, and each was directed to either pay the full filing fee or submit a properly executed application to proceed *in forma pauperis*. The plaintiffs named in the caption above, complied with that order and each, in turn, has

been afforded *in forma pauperis* status. The remaining putative plaintiffs failed to comply with the order and on April 18, 2011, their complaints were dismissed and stricken in accordance with Local Rule 3.2.[1]

The complaints alleged that the defendants – Louisiana Correctional Services, Inc. or LCS, CDC Warden Richard DeVille, Assistant Warden Delaney Beckley, Captain Robert McKithen, and Lt. Kristen Nugent – have deliberately failed to implement educational programs (such as programs for sex offenders, anger management, or vocational training) as required by La. R.S.15:828(B):, have denied the plaintiffs eligibility to participate in work-release programs in violation of La. R.S.15:1111, have not responded to or have interfered with prisoner grievances, have retaliated against the plaintiffs, and have deprived the plaintiffs of the opportunity to earn diminution of sentence or "good time" credits pursuant to La. R.S.15:571.3. The plaintiffs also accused the defendants of failing to utilize Federal funds in the proper manner.

Plaintiffs prayed for compensatory damages of $60,000 each; plaintiffs also prayed for injunctive relief directing the defendants to provide the various programs and to abide by the various statutes cited above.

These complaints have been referred to the undersigned for review, report, and

---

[1] *Michael Jackson v. LCS*, No. 3:11-cv-141; *Ivan Calderon v. LCS*, No. 3:11-cv-0144; *Jimmie Walker v. LCS*, No. 3:11-cv-0146; *Jonas Andrus v. LCS*, No. 3:11-cv-0147; *Joseph Willis v. LCS*, No. 3:11-cv-0150; *Myron Willis v. LCS*, No. 3:11-cv-0151; *Jessie Dietz v. LCS*, No. 3:11-cv-0152; *Alex Martin v. LCS*, No. 3:11-cv-0156; *George A. Smith v. LCS*, No. 3:11-cv-0158; *Shaun Edmonds v. LCS*, No. 3:11-cv-0159; *Arthur K. Neville v. LCS*, No. 3:11-cv-0160; *Angelo Brown v. LCS*, No. 3:11-cv-0161; *Morlen Brown v. LCS*, No. 3:11-cv-0163; *James Bartie v. LCS*, No. 3:11-cv-0165; *Reynard Stewart v. LCS*, No. 3:11-cv-0166; *Reginald Carlson v. LCS*, No. 3:11-cv-0169; *Deaquarius Bias v. LCS*, No. 3:11-cv-0170; *Anthony Birotte v. LCS*, No. 3:11-cv-0172; *Robert Robinson v. LCS*, No. 3:11-cv-0173; *James Miller v. LCS*, No. 3:11-cv-0174; *Daniel Turner v. LCS*, No. 3:11-cv-0175; *Mark Gaston v. LCS*, No. 3:11-cv-0176; *Tyrone Chambers v. LCS*, No. 3:11-cv-0179; *Noah Turner v. LCS*, No. 3:11-cv-0181; and, *Martin Chatman v. LCS*, No. 3:11-cv-0182.

recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the purposes of this Report and Recommendation, the above captioned cases are hereby **CONSOLIDATED.**

For the following reasons plaintiffs' motion for Class Action Certification must be **DENIED**, and, plaintiffs' complaints should be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Law and Analysis*

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

3

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiffs' complaints succinctly set forth the claims and the basis for each cause of action. Each of the claims has been analyzed under these standards. Plaintiffs need not be permitted further amendment because their complaints – taken as true for the purposes of this report – fail to state a claim for which relief may be granted.

*2. Class Action Certification*

In order for a lawsuit to be certified as a class action under Rule of Federal Procedure 23(b)(3), the mover must prove that the four prerequisites found in Rule 23(a) and the two additional requirements in Rule 23(b)(3) are met. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir.1999). Under Fed.R.Civ.P. 23(a), an action may be maintained as a class action if it meets the criteria of numerosity, commonality, typicality and adequacy of representation. *Mc.Grew v. Texas Bd. Of Pardons and Paroles*, 47 F.3d 158, 161 (5th Cir.1995). The requirements for Rule 23(b) "are 'predominance' and 'superiority': 'Common questions must predominate over any

questions affecting only individual members', and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.' " *Mullen*, 186 F.3d at 624, citing *Anchem Products v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997), quoting Fed.R.Civ.P. 23(b)(3). The district court has wide discretion in deciding whether or not to certify a proposed class. *McGrew*, 47 F.3d at 161. Also, *Mullen*, 186 F.3d at 624.

Here, it is clear that the plaintiffs should not be permitted to litigate their conditions of confinement claims as a class action. Plaintiffs are prisoners acting *pro se* – none of the plaintiffs have demonstrated that he would be an adequate representative of his fellow inmates in a class action. *Caputo v. Fauver*, 800 F.Supp. 168, 169-170 (D.N.J.1992); *Fymbo v. State Farm Fire & Casualty Co.*, 213 F.3d 1320, 1321 (10th Cir.2000); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.1975); *Ethnic Awareness Org. v. Gagnon*, 568 F.Supp. 1186, 1187 (E.D.Wis.1983); <u>Wright, Miller & Kane, Federal Practice and Procedure 2d: Civil</u> § 1769.9, n. 12. See, *McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 162 (5th Cir.1995).

Further, plaintiffs have not demonstrated that the class of putative plaintiffs is so numerous that a class action suit would be the only adequate manner to resolve the claims. Presumably, all of the inmates at CDC were aware of the litigation and those who wished to participate in the litigation were afforded the opportunity to join as plaintiffs. Further, with regard to the requests for injunctive relief, only one plaintiff need prevail in order for all to have access to the programs requested.

Thus, plaintiffs' motion for class certification must be denied.

### 3. *Education, vocational training, rehabilitation programs, and work-release*

Plaintiffs complain that the defendants have not implemented the programs mandated by La. R.S.15:828(B) and further that they are not permitted to participate in a work-release program as provided by La. R.S.15:1111.

La. R.S.15:828(B) provides,

> The secretary [of the Department of Public Safety and Corrections] shall adopt rules and regulations for local jail facilities and state correctional institutions to encourage voluntary participation by inmates in certified treatment and rehabilitation programs, including but not limited to basic education, job skills training, values development and faith-based initiatives, therapeutic programs, and treatment programs. When funds are provided, such educational programs shall be available at each penal or correctional institution under the jurisdiction of the department. The rules and regulations may include provisions for furloughs or the awarding of good time, in addition to the provisions of R.S. 15:571.3(B), for offenders who are otherwise eligible. Offenders may be awarded up to one hundred eighty days good time for satisfactory participation in each approved program pursuant to the provisions of this Subsection, but no offender shall receive more than five hundred forty days total good time for program participation.

To the extent that there has been a violation of R.S.15:828, it does not plainly appear that any of the defendants are culpable. First of all, the statute directs the LDOC Secretary, and not the named defendants, to adopt rules and regulation for local jails to encourage voluntary participation in such programs by the inmates in their custody. Second, the requirement that such programs be made available is made contingent upon whether or not "...funds are provided..." an event beyond the control of the named defendants. Third, and most significantly, even if the defendants are in violation of the Louisiana statute, that is of no moment since Section 1983 is available only to redress violations of "... the Constitution and laws of the United States..." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).[2]

Finally, plaintiffs imply that such rehabilitation or educational services as mandated by the

---

[2] Section 1983 provides in pertinent part, "Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." 42 U.S.C. § 1983.

Louisiana statute are also thereby mandated by the Due Process clause of the Fourteenth Amendment. However, neither the Due Process clause, nor any other provision of the Constitution afford prisoners the constitutional right to educational or rehabilitative services or programs. *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir.1988); *Spurlock v. Gusman*, (E.D.La. 2010), 2010 WL 2102829, *Lathers v. Nelson Coleman Correctional Center*, Civ. Action No. 10–128, 2010 WL 1489903, * 10 (E.D.La. Mar. 22, 2010), adopted, 2010 WL 1485468 (E.D.La. Apr. 13, 2010); *Davis v. St. Charles Parish Correctional Center*, Civ. Action No. 10–98, 2010 WL 890980, *10 (E.D.La. Mar. 8, 2010); Morrison, 2010 WL 724173, *6; *Oatis v. St. Tammany Parish Sheriff's Office*, Civ. Action No. 09–6266, 2009 WL 3566120, *2–3 (E.D.La. Oct. 29, 2009); *Oglesby v. Gusman, Civ.* Action No. 09–3593, 2009 WL 3254145, *2 (E.D.La. Oct. 7, 2009); *Sampson v. Corrections Corporation of America*, No. 08–CV–0915, 2009 WL 837640, *16 (W.D.La. Mar. 26, 2009); *Wilbon v. Gusman*, Civ. Action No. 05–2443, 2006 WL 2119458, *2 (E.D.La. July 25, 2006); see also *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir.1991) (Prisoners do not have a constitutional right to "social services."); *Lato v. Attorney General of U.S.*, 773 F.Supp. 973, 978 (W.D.Tex.1991) (citing *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir.1988), *Newman v. State of Alabama*, 559 F.2d 283, 292 (5th Cir.1977), rev'd in part on other grounds *sub nom*., *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978)(Prisoners do not possess a protected liberty interest in educational programs, recreation opportunities, or in avoidance of being transferred to facilities where the programs are less comprehensive. The United States Constitution does not mandate educational, rehabilitative, or vocational programs.); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir.1995), citing *Moody v. Daggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976) (There is no federal constitutional right to participate in an education or rehabilitative program while incarcerated.); *Randall v. Director, TDCJ-CID*, Civil Action No. 09-

306 (ED Tex 2010), 2010 WL 1903772.

Likewise, plaintiffs are not entitled to relief under the Eighth Amendment's prohibition of cruel and unusual punishment. The lack of a rehabilitation programs does not by itself constitute cruel and unusual punishment, nor does the Eighth Amendment require the provision of every amenity needed to avoid mental, physical, or emotional deterioration. *See Alberti v. Klevenhagen*, 790 F.2d 1220, 1228 (5th Cir. 1986), citing, *Newman v. Alabama*, 559 F.2d 283, 291 (5th Cir.1977), *cert. denied*, 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978).

Clearly, plaintiffs' complaint that they have been denied educational or rehabilitation programs in violation of Louisiana law and the Constitution of the United States, fails to state a claim for which relief may be granted.

Their complaint concerning work-release is subject to the same analysis and the same result. Plaintiffs imply that the defendants violated their due process rights by failing to provide the opportunity to participate in a work-release program. Plaintiffs have neither a liberty nor property interest allowing them to participate in a work-release program.

In *Welch v. Thompson*, 20 F.3d 636 (5th Cir. 1994), the Fifth Circuit determined that La. R.S.15:1111, the statute which authorizes the LDOC's work-release program – entrusts the actual operation of the work release program to the LDOC. The court further determined that the statute does not dictate to the LDOC who it must put on work-release. In short, the Fifth Circuit has held that "...La. R.S.15:1111 <u>does not create a liberty interest</u> subject to the Due Process Clause." *Welch v. Thompson*, 20 F.3d 636, 644 (5th Cir. 1994). The statute is virtually identical to La. R.S.15:711 which authorizes Parish Sheriffs to establish work-release programs within their jurisdictions. Indeed, the latter statute also provides, "<u>Each sheriff</u> shall establish written rules for the administration of the work release program and <u>shall determine those inmates who may participate</u>

<u>in the release program</u>..." Since the statutes are virtually identical in substance, it is safe to conclude that R.S.15:711, like its LDOC counterpart, R.S.15:1111, does not create a liberty interest subject to the Due Process Clause.

Since the statute does not create a protected liberty interest for eligible prisoners, there can be no deprivation of a liberty interest protected by the due process clause of the Constitution, and therefore plaintiffs cannot show that their rights to due process have been violated.

To the extent that plaintiffs also imply that they were deprived of a "property interest" as opposed to a liberty interest in violation of the due process clause, such an argument also lacks an arguable basis in law and fact. In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court concluded that in order to have a property interest in a benefit, a person must have more than a "unilateral expectation" of it. Rather, he must "have a legitimate claim of <u>entitlement</u> to it." *Id.* (emphasis supplied). Thus, the "property interest" protected by the due process clause of the Fourteenth Amendment is defined by the concept of "entitlement," which in turn describes "the security of interests that a person has already acquired in specific benefits." *Id.* at 576, 92 S.Ct. at 2708. In other words, a person's interest in a benefit is a property interest only "if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit..." *Evans v. City of Dallas*, 861 F.2d 846, 848 (5th Cir. 1988). Plaintiffs can point to no rule or understanding which entitles them to participate in a work-release program, whether administered by the LDOC or the local Sheriff.

Indeed, the Fifth Circuit has previously held that prisoners have no property interest work-release employment. *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir.1995). Plaintiffs are not constitutionally entitled to participate in the Louisiana work-release program and therefore their complaint fails to state a claim for which relief may be granted.

*4. Inability to earn "good-time"*

Plaintiffs also complain that because they are unable to participate in "... certified treatment and rehabilitation programs, including but not limited to basic education, job skills training, values development and faith-based initiatives, therapeutic programs, and treatment programs..." they are also denied the opportunity to earn up to 540 days of good time credit. As shown above, La. R.S.15:828 encourages the adoption of such programs and further provides that the LDOC's "... rules and regulations <u>may include provisions for furloughs or the awarding of good time</u>, in addition to the provisions of R.S. 15:571.3(B), <u>for offenders who are otherwise eligible</u>."

Read liberally, plaintiffs contend that the defendants are in violation of due process because their failure to provide the programs outlined above has interfered with the plaintiffs' ability to earn good time credits. However, plaintiffs again fail to state a claim for which relief may be granted since inmates do not have a protected liberty interest in their classification status or in the opportunity to earn good-time credits. *See Luken v. Scott*, 71 F.3d 192, 193 (5th Cir.1995), *cert. denied*, 116 S.Ct. 1690 (1996) (loss of opportunity to earn good-time credits is merely a collateral consequence of the prisoner's custodial status which does not create a constitutionally protected liberty interest). While prisoners who are entitled to release on mandatory supervision have a protected liberty interest in <u>previously earned good-time credits</u> they are not constitutionally entitled to earn such credits. *Compare Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir.2000) (The relation of good time-earning status to a prisoner's release date is too speculative to create a liberty interest).

Plaintiffs' good-time argument also fails to state a claim for which relief may be granted.

*5. Prison Grievances, retaliation, etc.*

Plaintiffs also complain that "[o]n several occasions, we the inmate population ... wrote to the administration on numerous occasions requesting to have these programs implemented, or at

least forward us to an institution that ... provides such government funded programs." They allege that "... inmates are now beginning to receive disciplinary reports for any type of infraction, as well as a couple of inmates were wrote up by Asst. Warden Beckley for abuse, for using the A.R.P. system." Plaintiffs claim that they observed Lt. Nugent "... burning, what appears to be legal documents or some type of documents to be request form and A.R.P. forms, burning these documents in a barrow behind the institution building." Plaintiffs imply that this is the reason they have not received responses from the LDOC administration.

To the extent plaintiffs complain that their grievances are unheeded, or that the grievance system is otherwise inadequate, they again fail to state a claim for which relief may be granted. Simply put, there is no constitutionally protected interest in the processing of inmate grievances. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir.2005). Additionally, plaintiffs cannot show any injury from the failure to consider their grievances because, as shown above, the alleged violations complained of in the grievances did not implicate their constitutional rights. *Compare Bell v. Woods*, 382 Fed. Appx. 391 (5th Cir. 2010) (unpublished), citing *Geiger v. Jowers, supra*, and *Bender v. Brumley*, 1 F.3d. 271 (5th Cir. 1993).

Plaintiffs imply that some or all of them, or even other inmates who have not joined in their suit, were retaliated against for filing grievances complaining about the lack of rehabilitation programs. However, read carefully, the facts alleged do not support a retaliation claim.

To prevail on the claim for retaliation under section 1983, a prisoner must prove (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which, in this context means that, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir.1998). The prisoner must produce direct evidence of motivation, or, the

11

more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir.1995). The plaintiff must allege more than just his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1999).

Here, plaintiffs' retaliation claim, read liberally and accepted as true, fails to establish causation as required by the jurisprudence. As noted above, plaintiffs must allege facts to demonstrate that "but for" their grievances, the alleged retaliatory adverse acts – in this case disciplinary write-ups – would not have occurred. Plaintiffs, however, candidly admit that "... inmates are now beginning to receive disciplinary reports <u>for any type of infraction,</u> as well as a couple of inmates were wrote up by Asst. Warden Beckley <u>for abuse, for using the A.R.P. system</u>." In other words, it is logical to assume that the plaintiffs who received disciplinary write ups received them for committing "any type of infraction" or for abusing the system, not solely for the reason that they exercised their constitutional right to seek redress. Moreover, plaintiffs only complain that some inmates received disciplinary reports or "were wrote up" as a result of having submitted grievances; being written up, without more, does not establish a retaliatory adverse act since there is no indication that any of the plaintiffs suffered punishment as a result of the write ups and no indication that the write ups had a chilling effect on any one of the plaintiffs. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir.2006)(A retaliatory adverse act must be more than *de minimis* to state a viable retaliation claim; the act must be "capable of deterring a person of ordinary firmness from further exercising his constitutional rights.")

### *6. Federal Funds*

Finally, plaintiffs complain that the defendants are "... failing to utilize the Federal funds in the proper manner which it's required..." According to plaintiffs, these funds are allocated to the

prison by virtue of 42 U.S.C. §§1997h and 1997e.

First of all, plaintiffs' claim is purely conclusory, unsupported by any factual allegation and thus insufficient to state a claim for which relief may be granted. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

Second, the quoted statutes must be read together with 42 U.S.C. § 1997a which authorizes the Attorney General, in his discretion, to intervene in those cases where institutionalized persons are being denied rights, privileges, or immunities secured or protected by the Constitution or laws of the United States. Section 1997h requires the Attorney General to notify the appropriate Federal agency or department which provides funding to the investigated institution of such action. Plaintiffs have not shown, nor does it appear, that the quoted statutes authorize a private cause of action with regard to the receipt or expenditure of federal funds. In short, plaintiffs' complaint concerning the misuse of funds fails to state a claim for which relief may be granted.

### *Conclusion and Recommendation*

Each complaint asserted by the plaintiffs has been examined; each complaint fails to state a claim for which relief may be granted. Therefore,

Plaintiffs' Motion for Class Action Certification is **DENIED;** and,

**IT IS RECOMMENDED** that plaintiffs' civil rights complaints be **DISMISSED WITH PREJUDICE** for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to

another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, May 4, 2011.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE